**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

                      Plaintiff,

v.

                                            Case No. 15-20609

JEFFREY LEE MILLER,

                      Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR RELEASE FROM CUSTODY**

Defendant Jeffrey Lee Miller pleaded guilty to conspiracy to manufacture and distribute methamphetamine ("meth"), 21 U.S.C. §§ 841(a)(1) and 846. (ECF No. 292, PageID.1563.) On January 10, 2019, the court sentenced Defendant to 120 months imprisonment. (ECF No. 560, PageID.4968.) Defendant's projected release date is in May 2025. (ECF No. 658, PageID.5704; ECF No. 661, PageID.5750.)

Defendant has filed a "Motion for Release from Custody Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i)." (ECF No. 658.) He asks the court to reduce his sentence to time served and order his immediate release, almost five years early.  He argues that the risk of contracting the Coronavirus Disease ("COVID-19") is too great to permit his continued detention. The government has filed a response and Defendant has replied. (ECF Nos. 661, 667.) The court has reviewed the record and will deny Defendant's motion.

A court may reduce a term of imprisonment if it determines "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A). The court

must also weigh the sentencing factors provided under 18 U.S.C. § 3553(a) and determine if a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement[]" with which courts must comply. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 of the Sentencing Guidelines explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." The category of "Other Reasons" requires a determination from the Director of the Bureau of Prisons ("BOP") that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines. 18 U.S.C. § 3582(c)(1)(A); U.S. Sentencing Guidelines Manual § 1B.13; *United States v. Sapp*,

Case No. 14-20520, 2020 WL 515935, at *2 (E.D. Mich. Jan. 31, 2020) (Leitman, J.)

(summarizing compassionate release requirements); *see also United States v. Kincaid*,

802 Fed. App'x 187, 188 (6th Cir. 2020).

Considering the sentencing factors under 18 U.S.C. § 3553(a), Defendant's early

release is not warranted. Title 18 U.S.C. § 3553(a) provides that "[a] court, in

determining the particular sentence to be imposed, shall consider[:]"

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established . . .
>
> (5) any pertinent policy statement . . .
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

"[D]istrict courts have 'broad discretion to determine what sentence will serve §

3553(a)'s statutory objectives." *United States v. Kincaid*, 805 Fed. App'x 394, 394 (6th

Cir. 2020) (quoting *United States v. Kontrol*, 554 F.3d 1089, 1093 (6th Cir. 2009))

(affirming a district court's denial of compassionate release after consideration of §

3553(a)'s factors).

Defendant was a member of an outlaw motorcycle gang, the Vigilantes

Motorcycle Club, for many years. (ECF No. 292, PageID.1571.) He was also actively

associated with the Devils Diciples [sic] Motorcycle Club, who were deeply and

profitably involved in the manufacturing, use, and distribution of meth, among a myriad

of other racketeering crimes and miscellaneous anti-social behavior, including

obstruction of justice, subornation of perjury, and murder. (*Id.*, PageID.1571-73.)

In March 2010, Defendant was sentenced to twelve days in jail for aggravated

domestic violence. (*Id.*, PageID.1576.) He served two years of probation. (*Id.*)

Defendant began to help the Devils Diciples produce and distribute meth in 2013,

at the latest. (*Id.*, PageID.1571.) From then and until his arrest in January 2016,

Defendant participated in the Devils Diciples' "cooking" operations. (*Id.*, PageID.1572.)

He was aware of and understood the wide scope of meth distribution, stretching across

the state of Michigan and other regions of the United States. (*Id.*)

Defendant was tasked with important responsibilities in the drug conspiracy—he

bought, transported, and delivered pseudoephedrine, a base chemical used to create

meth. (*Id.*) Over the course of many years, Defendant was responsible for the trafficking

of over 300 grams of pseudoephedrine.[1] (*Id.*) Defendant also learned to manufacture

meth. (ECF No. 307, PageID.1778-80.) With his assistance, and the participation of

---

[1]     By comparison, a regular dosage of Sudafed: Sinus Congestion contains 30 milligrams of pseudoephedrine. Sudafed, *SUDAFED® Sinus Congestion* (last visited June 12, 2020), https://www.sudafed.com/products/sudafed-sinus-congestion?upcean=300810865241#directions.

many other members of the Devils Diciples, the organization was able to sell substantial quantities of meth in Southeast Michigan. (*Id.*; ECF No. 292, PageID.1571-72.)

Beginning in the summer of 2015, Defendant manufactured meth with the Devils Diciples at his residence in Warren, Michigan. (ECF No. 292, PageID.1573.) Police eventually searched Defendant's residence and discovered meth-making tools and devices. Defendant's residence had an "active cook" with bottles containing the acid precursors to meth, along with coffee filters, wire cutters, electrical tape, plastic tubes, lithium batteries, pseudoephedrine, fuel, lye, and a cold pack, all of which are used in the meth production process. (ECF No. 332, PageID.1990-92, 1996-97; ECF No. 337, PageID.2506-08; ECF No. 661, PageID.5749.) The residence also had a "burn pit," containing discarded toxic chemicals consumed in meth manufacturing. (ECF No. 335, PageID.2020-21; ECF No. 661, PageID.5749.)

Defendant was arrested and pleaded guilty to conspiracy to manufacture and distribute methamphetamine, 21 U.S.C. §§ 841(a)(1) and 846. (ECF No. 292, PageID.1563.) He was involved in a drug conspiracy that had used over 1000 grams of pseudoephedrine; he maintained a premises for meth manufacturing; and his offense "created a substantial risk of harm to human life and the environment." (*Id.*, PageID.1574, 1578 (citing U.S. Sentencing Guidelines Manual §§ 2D1.11(d)(5), 2D1.1(12), 2D1.1(b)(13)(C) (U.S. Sentencing Comm'n 2018)).) Defendant's advisory guideline range was set at 188 to 235 months imprisonment. (*Id.*, PageID.1578.)

Defendant cooperated with the government in investigations of the Devils Diciples and the Vigilante Motorcycle Club. (ECF No. 540, PageID.4736.) The government moved for a downward departure under U.S. Sentencing Guidelines

Manual § 5K1.1 and the court sentenced Defendant to a term of 120 months imprisonment, sixty-eight months below the lowest level of Defendant's guideline range. (*Id.*; ECF No. 560, PageID.4969.)

Defendant was heavily involved in the production and distribution of highly addictive narcotics. (ECF No. 292, PageID.1571-73.) He obtained base chemicals for meth production, learned and contributed to meth manufacturing, and even established his residence as a meth lab. (*Id.*; ECF No. 307, PageID.1778-80; ECF No. 332, PageID.1990-92, 1996-97; ECF No. 335, PageID.2020-21; ECF No. 337, PageID.2506-08; ECF No. 661, PageID.5749.) Defendant knew and understood he was part of a larger conspiracy and knowingly contributed to wide-spread meth distribution. (ECF no. 292, PageID.1571-72; ECF No. 307, PageID.1779-80.) Much of the profits from meth sales likely funneled back into the Devils Diciples organization, helping to fund the gang's criminal, and often violent, activities.

Defendant's actions were serious and extended; over the course of several years he facilitated meth consumption and addiction in this district and potentially many others. "[T]he nature and circumstances of the offense and the history and characteristics of . . . [D]efendant" support a sentence of at least ten years. 18 U.S.C. § 3553(a)(1). Defendant's circumstances and history do not justify compassionate release. 18 U.S.C. § 3582(c)(1)(A).

Defendant's early release would not adequately reflect "the seriousness of [his] offense," which involved substantial participation in the illegal meth trade. 18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A). After a significant downward departure and sentence of ten years, release almost five years early would not sufficiently "promote

respect for the law" and would not "provid[e] just punishment for [Defendant's] offense."
18 U.S.C. § 3553(a)(2)(A); 18 U.S.C. § 3582(c)(1)(A).

A sentence of ten years imprisonment, although lower than the guideline range
for Defendant's offense, "afford[s] adequate deterrence to [Defendant's] criminal
conduct." 18 U.S.C. § 3553(a)(2)(B); 18 U.S.C. § 3582(c)(1)(A). Ten years removed
from free society will better impress upon Defendant, other meth traffickers, and
members of the Devils Diciples and Vigilante Motorcycle Clubs that Defendant's form of
criminal lifestyle is unacceptable and will be met with serious punishment.

While in prison, Defendant has worked to better himself. He has participated in
educational offerings and drug rehabilitation programs; he does not have a disciplinary
record. (ECF No. 658, PageID.5733-35.)

Defendants recent behavior, including his cooperation with the government in its
investigation of the Devils Diciples and the Vigilante Motorcycle Club, is commendable.
However, Defendant took these socially positive actions only after he had been arrested
and placed in a controlled and heavily monitored facility. While Defendant was in free
society, he involved himself in organized narcotics production and distribution, and did
so for many years. (ECF No. 292, PageID.1571-73; ECF No. 307, PageID.1778-80;
ECF No. 332, PageID.1990-92, 1996-97; ECF No. 335, PageID.2020-21; ECF No. 337,
PageID.2506-08; ECF No. 661, PageID.5749.) Defendant may still have connections
with the motorcycle gangs he worked for. If Defendant is released almost five years
early, he may commit more crimes. "[P]rotect[ion] [of] the public from further crimes of . .
. [D]efendant" favors the court's original sentence. 18 U.S.C. § 3553(a)(2)(C); 18 U.S.C.
§ 3582(c)(1)(A).

Finally, the "sentencing range established" counsels against Defendant's early release. 18 U.S.C. § 3553(a)(4); 18 U.S.C. § 3582(c)(1)(A). Defendant's advisory guideline range was 188 to 235 months imprisonment. (ECF No. 292, PageID.1578.) It was only as a result of a substantial downward departure under U.S. Sentencing Guidelines Manual § 5K1.1 that the court sentenced him to 120 months imprisonment. The court does not believe an additional reduction of almost five years is appropriate. 18 U.S.C. § 3582(c)(1)(A).

Defendant devotes most of his arguments in favor of compassionate release to the health risk presented by COVID-19. He asserts that FCI Fort Dix, where Defendant is housed, has forty-three confirmed cases. (ECF No. 658, PageID.5697.) However, Defendant does not cite evidence to support this contention. The BOP has reported only fourteen cases at FCI Fort Dix. Federal Bureau of Prisons, *COVID-19: Coronavirus* (last visited June 22, 2020), https://www.bop.gov/coronavirus/. Defendant has hypertension, uncontrolled Type II Diabetes, and sleep apnea. (ECF No. 658, PageID.5697; ECF No. 661, PageID.5750; ECF No. 662-1, PageID.5797.)

Although the conditions at FCI Fort Dix are cause for concern, they do not at this time justify Defendant's release. 18 U.S.C. § 3582(c)(1)(A). The BOP has taken actions to mitigate the spread of COVID-19 in the federal prison system. Inmates' internal movement is suspended, subject to narrow exceptions such as medical examinations; newly arriving inmates are screened for exposure risk and symptoms; symptomatic inmates, as well as asymptomatic inmates with exposure risk, are isolated; social visits have been canceled. Federal Bureau of Prisons, *BOP Implementing Modified*

*Operations* (last visited June 22, 2020),

https://www.bop.gov/coronavirus/covid19_status.jsp. (ECF No. 661, PageID.5751-52.)

While FCI Fort Dix apparently has fourteen confirmed cases of COVID-19 among a population of more than 2,780, to order Defendant's release, the court would be left to speculate as to whether COVID-19 will continue to spread at FCI Fort Dix, despite the BOP's precautions, whether Defendant will contract the disease, and finally whether Defendant will develop serious symptoms. Federal Bureau of Prisons, *COVID-19: Coronavirus* (last visited June 22, 2020), https://www.bop.gov/coronavirus/; Federal Bureau of Prisons, *FCI Fort Dix* (last visited June 22, 2020), https://www.bop.gov/locations/institutions/ftd/. The court would also need to speculate as to whether Defendant would have greater exposure risk in free society. At FCI Fort Dix, Defendant is in a confined and controlled environment. There are tens of thousands of confirmed COVID-19 cases in the general public, depending on the location. State of Michigan, *Coronavirus: Michigan Data* (last visited June 22, 2020), https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html (detailing reported COVID-19 cases across the state of Michigan, where Defendant previously resided). Additionally, Defendant may have less access to medical care if released. At FCI Fort Dix, Defendant is monitored. (ECF No. 661, PageID.5751-52.) If he develops symptoms of COVID-19, the prison has a system in place to provide treatment. (*Id.*) The quality and extent of Defendant's healthcare in free society remains uncertain.

Defendant participated in an extensive conspiracy to manufacture and distribute meth. He was an active member of a criminal underworld for many years. Although he cooperated with the government and has behaved well since being incarcerated,

Defendant's sentence was unusually lenient, sixty-eight months below the lowest

sentence contemplated by the calculated guideline range. The court will not further

reduce Defendant's sentence based upon the presentations made thus far. The

outbreak of COVID-19, while presenting health risks, does not alter the court's analysis.

Accordingly,

IT IS ORDERED that Defendant's "Motion for Release from Custody Pursuant to

18 U.S.C. § 3582(c)(1)(A)(i)" (ECF No. 658) is DENIED.

s/Robert H. Cleland                     /
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  June 23, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, June 23, 2020, by electronic and/or ordinary mail.

s/Lisa Wagner                          /
Case Manager and Deputy Clerk
(810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\15-20609.MILLER.MotionforReleasefromCustody.RMK.RHC.3.docx